UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WILSON,

        Plaintiff,

v.

BLACKMAN CHARTER TOWNSHIP, a
municipal entity, PUBLIC SAFETY
OFFICERS BRENT DOXTADER, and
KORY TORBET, in their individual
capacities,

        Defendants.
_____/

Case Number: 09-10150
HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 19). The Court heard oral argument on February 24, 2010. At the conclusion of the hearing, the Court took this matter under advisement. For the reasons that follow, the Court **GRANTS** the motion.

**I. STATEMENT OF FACTS**

On May 20, 2008, Plaintiff Michael Wilson, and his fiancee, Cortnie Penoes, were at the mall when Wilson began to feel ill. Defs.' Ex . B, Pl.'s Dep. at 30, 32. He returned to the vehicle, and Penoes contacted Wilson's relatives. Defs.' Ex. C, Dep. of Penoes at 13. Wilson's brother, Nick Wilson, called 9-1-1. Defs.' Ex. F, Dep. of Nick Wilson at 15. Blackman Charter Township Public Safety Officer, Defendant Officer Brent Doxtader, a licensed medical first responder, was dispatched to Westwood Mall in

Jackson, regarding a potential diabetic reaction. Defs.' Ex. A, Dep. of Doxtader at 28. When Doxtader arrived, Wendy Dick, Plaintiff's mother, and Nick Wilson, Plaintiff's brother, as well as Nick's girlfriend, and Dick's husband, already had arrived with orange juice and sugar. Defs.' Ex. C, Dep. of Penoes at 19-20. Wendy Dick informed Doxtader that Wilson's blood sugar was low. Defs.' Ex. E, Dep. of Dewey Dick at 10-11, 15.

Doxtader approached Plaintiff, who was seated in the driver's side of the vehicle, and attempted to talk to Plaintiff to find out what was happening. Defs.' Ex. A at 35, 38. He asked Plaintiff his name, age, and whether he was okay. Id. at 32. The officer also tried to get Plaintiff's attention by touching his arm and asking him to sit up and talk. Defs.' Ex. E at 11; Defs.' Ex. A at 35, 58.

Wilson responded that he was okay, and turned his back to Doxtader. Doxtader commented, "Well obviously he doesn't care for police." Defs.' Ex. A at 33-34. According to Plaintiff's family members, Wilson's response simply reflected that he did not know what he was doing. See Defs.' Ex. F at 19. Doxtader twice told Wilson to sit up and talk. Id. Doxtader then reached in and touched Plaintiff on his left elbow and told him to turn around. When Wilson turned, he started swinging and striking at the officer. Defs.' Ex. A at 38. Other witnesses describe his arms as "flailing." See Defs.' Ex. D, Dep. of Wendy Dick at 30.

After the EMTs, Rick Marin and Dan Irvine, and Defendant Officer Kory Torbet arrived on the scene, the EMTs approached Plaintiff's vehicle. They tried to remove Plaintiff from the vehicle, and Plaintiff again started flailing his arms around. Plaintiff also closed his fist and cocked his arm back in what appeared to be an attempt take a swing at one of the EMTs, causing them to move away from the car. Defs.' Ex. G,

2

EMTs' statements; Defs.' Ex. H, Dep. of Irvine at 16-17, 36, 68; Defs.' Ex. E, Dep. of Dewey Dick at 17-18. Torbet and Doxtader immediately grabbed Plaintiff and began to pull him out of the vehicle. The three ended up on the ground. It is undisputed that Plaintiff continued to struggle, and the officers handcuffed Plaintiff.

After Plaintiff was restrained, he was placed on a cot and put in the ambulance. Once Wilson stopped struggling, the handcuffs were removed. Defs.' Ex A at 53. Plaintiff suffered an abrasion to his forehead during his removal from the vehicle. Defs.' Ex. G at 14-15; Defs.' Ex. H at 26. Plaintiff did not want treatment at the scene; however, he do did go to the hospital several days later because he was unable to remove the gravel from his forehead. Defs.' Ex J; Defs.' Ex. B at 15-16.

Torbet issued Plaintiff a citation for disorderly conduct, which was rescinded by the Director of Public Safety Michael Jester, see Defs.' Ex. K, Dep. of Jester at 50, who ordered an internal investigation of the incident. Further, the internal investigation report characterized Doxtader, "[a]s confrontational with the patient's family, us[ing] obscenities toward the patient, and [being] overall very abrasive and unnecessarily confrontation in his handling of the incident." Pl.'s Ex. 3. Doxtader was disciplined as a result of his conduct.

Plaintiff filed suit alleging federal statutory and constitutional claims, and state common law and statutory claims.

## II. STANDARD OF REVIEW

The Federal Rule of Civil Procedure authorize this Court to grant summary judgment "if the pleadings, the discovery and disclosure of materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

3

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  There is no genuine issue of material fact if there is no factual dispute that would affect the legal outcome of the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether summary judgment is appropriate, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  Hawkins v. Anheuser-Busch Inc., 517 F.3d 321, 332 (6th Cir. 2008).  However, a party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial."  FED. R. CIV. P. 56(e)(2).

## III.  ANALYSIS

Plaintiff has advanced federal constitutional and statutory claims as well as state common law and statutory claims.  Specifically in Count I, he alleges civil rights violations including excessive force, deliberate indifference to a serious medical need, and municipal liability for failure to train or supervise.  In Count II, he alleges a state tort claim of assault and battery.  In Count III, Plaintiff alleges a claim of gross negligence.  In Count IV, Plaintiff advances a claim of false arrest/false imprisonment.  In Counts V and VI, he asserts that Defendants violated Michigan Persons With Disabilities Civil Rights Act, MICH. COMP. LAWS § 37.1102 et seq., and the American with Disabilities Act, 42 U.S.C. § 12132 et seq., respectively.  Defendants asks that they be awarded summary judgment on all counts of the complaint.  The Court addresses the issues below.

### A.  Civil Rights Claims

Plaintiff pursues his federal civil rights claims under 42 U.S.C. § 1983. It provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Under the language of the statute, to succeed on a § 1983 claim, a plaintiff must prove that a person deprived him of a federal right and that person acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). There is no dispute that Defendants Doxtader and Torbet were acting under color of state law. Accordingly, the Court begins its analysis of this claim with the identification of the specific constitutional right allegedly violated by Defendants. See Graham v. Connor, 490 U.S. 386, 394 (1989). The Fourth Amendment protects individuals from excessive force by the police.[1] See U.S.CONST. amed. IV

### 1. Qualified Immunity for the Officers

In general, government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Government officials will

---

[1] Plaintiff has abandoned his claim that Defendants were deliberately indifferent to his serious medical need. Although Wilson would have the right to receive "adequate medical care" if he were a pretrial detainee, see Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985), in light of the fact that Defendants were facilitating his medical treatment, this claim fails as a matter of law.

not be held liable for mere mistakes in judgment, whether the mistake is in law or in fact. Groh v. Ramirez, 540 U.S. 551, 567 (2004).

The United States Supreme Court has set forth a two-prong test[2] to determine whether an officer-defendant is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 200 (2001). The first prong requires the reviewing court to inquire whether the facts, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." Id. at 201. The court must "concentrate at the outset on the definition of the constitutional right and [then] determine whether on the facts alleged, a constitutional violation could be found." Id. If a constitutional violation could be found, the second prong requires the court to decide whether a reasonable official would, at the time the act was committed, understand that his conduct violated that right. Id. A government official will be entitled to immunity as long as the conduct does not amount to a violation of a clearly established right of which a reasonable person would have known. Harlow, 457 U.S. at 818. A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." Saucier, 533 U.S. at 202.

### 1. Did Defendants Use Excessive Force

The Fourth Amendment's "objectively reasonable" standard is utilized when analyzing a plaintiff's excessive force claim. Graham v. Connor, 490 U.S. at 388.

In determining whether an officer's actions were reasonable, the specific

---

[2] The Court recently reiterated the benefits of the Saucier test in determining qualified immunity, but held that courts need not apply the analysis in a rigid two-step sequence. Pearson v. Callahan, 129 S.Ct. 808, 811 (2009)

6

> facts of each case are key. Courts should pay particular attention to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

Kostrzewa v. City of Troy, 247 F.3d 633, 639 (quoting Graham, 490 U.S., at 396).

In assessing Plaintiff's excessive-force claim, the Court must construe all of the facts in the record "in the light most favorable" to Plaintiff. Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir.2004). Only then can the Court consider whether "Defendants' actions were objectively unreasonable, which is 'a pure question of law.' " Chappell v. City of Cleveland, 585 F.3d 901, 909 (6th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n. 8 (2007)).

Plaintiffs' position is, given his medical condition, the use of any force was excessive. He analogizes his circumstances to situations involving police interaction with individuals with diminished capacity. For example, in Champion, 380 F.3d at 896, the court examined a police encounter with the plaintiff, who was nonresponsive and unable to speak due to autism. Because a court must view the facts in the light most favorable to the plaintiff when assessing qualified immunity, the appellate assumed that the defendant officers lay on top of the plaintiff, even though he had stopped resisting arrest, then sprayed him with pepper spray even though he was immobilized by handcuffs and a hobbling device. Consequently, the court of appeals concluded that the defendants' use of force was not objectively reasonable. Id. at 901. The court further cautioned that because the officers were confronting an individual they knew

7

was mentally ill or retarded, the officers must take into account "the diminished capacity of an unarmed detainee. . .when assessing the amount of force exerted." Id. at 904.

Any analogy between Plaintiff's situation and the situation in Champion fails inasmuch as the conduct as alleged in Champion would have violated any person's rights, regardless of his diminished capacity. Further, Plaintiff's assertion that he lacked any criminal intent to injure the officers, fails in light of the facts showing that Wilson was combative with his family members prior to the police officers arrival and continued to behave that way through his involuntary placement in EMT vehicle for treatment. It is clear from the record that he was physically resistive to the officers' intervention in removing him from the car[3] and the officers' efforts to handcuff Plaintiff.

Similarly, in St. John v. Hickey, 411 F.3d 762 (6th Cir. 2005), the court of appeals considered the conduct of the defendant police officers, who placed the wheelchair-bound plaintiff into the back of their police cruiser even after he complained that his legs would not bend. The court observed that even if it assumed that the defendants "had probable cause to arrest [the plaintiff] for disorderly conduct, he was not engaging in violent behavior or physically resisting the officers' attempts to remove him from the house." Id. at 772. The court also noted that, the plaintiff's "crime was neither violent nor severe" and there was no contention that the plaintiff presented a risk to anyone's

---

[3]Although Wendy Dick characterized the officers' conduct as "slamming" Plaintiff to the ground, her characterization does not create a material issue of fact. Plaintiff's injury happened while he was on the ground, turning his face on the gravel. As noted by the Sixth Circuit Court of Appeals in Gladdis v. Redford Township, 364 F.3d 763, 773 n.8 (6th Cir. 2004), "minor discrepancies in testimony. . .in an excessive force claim" do not create genuine issue of material fact, when "the witness views the events from a worse vantage point than that of the officers." Here, the officers testified that they fell to the ground as they tried to remove Plaintiff from the vehicle.

safety or a risk of flight. Therefore, the officers were only allowed to exercise a minimum of force was required to effectuate the arrest. Id. (citing Graham, 490 U.S. at 396).

In contrast to the cases cited by Plaintiff, here, Defendant officers removed Plaintiff from the vehicle for medical treatment. Moreover, this case falls squarely within the exception identified by the St. John Court when it noted that "the record d[id] not suggest that exigent circumstances demanded a very speedy arrest of [the plaintiff] as might be the case where officers needed to proceed quickly to another location or to tend to an injured party. Id. at 772. Here, the officers needed to react quickly because of the nature of Plaintiff's medical condition. It is undisputed that the officers never punched, kicked, or used their nightsticks on Plaintiff. Looking at the totality of the circumstances leading up to the removal of Plaintiff from his vehicle, "from the perspective of a reasonable officer on the scene," Defendants' decision to remove Plaintiff from the vehicle was objectively reasonable in light of Wilson's resistance to treatment, Wilson's attempt to strike the EMT, and the need to expedite treatment of his diabetes. Likewise their decision to handcuff Wilson, who continued to flail on the ground, was objectively reasonable. Accordingly, the Court finds that neither Doxtader nor Torbet violated Wilson's Fourth Amendment rights as a matter of law. Defendants acted in an objectively reasonable manner Because the Court finds that Plaintiff cannot establish a violation of Wilson's constitutional rights, it has no need to determine whether the right was clearly established.

**2. Municipal Liability**

Blackman Charter Township may be subject to liability under § 1983 where the action alleged to be unconstitutional executes or implements a governmental policy or custom. Monell v. New York Dept. of Social Services, 436 U.S. 658, 690-91 (1978). Nevertheless, as is the case here, because no constitutional violation can be found arising out of the incident here, there is no municipal liability. City of Los Angeles v Heller, 475 U.S. 796, 799 (1986). Accordingly, the Court grants summary judgment on this claim.

### B. STATE LAW CLAIMS

#### 1. Intentional Tort Claims

##### a. Assault and battery

A police officer may use reasonable force when making an arrest. Brewer v. Perrin, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984). "[T]he measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary. Michigan courts have also recognized that "[w]hether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." People v. Hanna, 567 N.W.2d 12, 16 (1997) (quoting Forrester v. San Diego, 25 F.3d 804, 807-08 (9th Cir.1994)). Thus, although it is well established that an officer may use such force as is reasonably necessary to effect a lawful arrest, an officer who uses excessive force may be held liable for assault and battery. White v. City of Vassar, 403 N.W.2d 124, 129 (Mich. Ct. App. 1987).

The Court finds the officers' removal of Plaintiff from the vehicle and handcuffing him were reasonably necessary as a matter of law. Because the officers were unable to predict whether Plaintiff could suffer serious medical consequences, they chose a

10

course of action which would immediately eliminate the potential threat. Just as the Court concluded that the officers' use of force was reasonable in analyzing Plaintiff's § 1983 claim, it finds the force was reasonably necessary relative to the assault and battery claim. Anderson v. Antal, No. 9801657, 1999 WL 717993 (6th Cir. Sept. 7, 1999).

In the alternative, the Court finds Defendants are entitled to immunity. The Michigan Supreme Court, in Odom v. Wayne County, 760 N.W.2d 217 (Mich. 2008), articulated how a court analyzes whether immunity should apply to intentional torts such as assault and battery. See also, Ross v. Consumers Power Co (On Rehearing), 363 N.W.2d 641 (Mich. 1984). It stated that employees enjoy a qualified right to immunity provided the employee's challenged acts were undertaken during the course of employment; the employee was acting, or reasonably believed he was acting, within the scope of his authority; the acts were undertaken in good faith, or not with malice, and the acts were discretionary, rather than ministerial, in nature. Id.

Here, the Court finds Defendants were clearly acting during the course of their employment and within the scope of their authority. The record fails to reveal any evidence that their actions relative to removing Plaintiff from the vehicle and handcuffing him were not in good faith or were carried out with malice. The only actions attributable to the officers on the record were clearly undertaken in good faith to effectuate medical treatment for Plaintiff's hypoglycemia. Their actions, in deciding how to respond to the situation involving a non-cooperative individual in need of medical attention and family and friends attempting to dictate their course of action were discretionary. Accordingly, they are entitled to summary judgment on this claim.

11

### b. False Arrest/False Imprisonment Claim

Under Michigan law, a false arrest claim under Michigan law requires "an illegal or unjustified arrest" which is "not based on probable cause." Peterson Novelties, Inc. v. City of Berkley, 672 N.W.2d 351 (Mich. Ct. App. 2003). There is no need to show that the arrestee was actually guilty of any offense. Id. ("Whether the plaintiff would actually have been convicted is irrelevant because actual innocence is not an element of false arrest.").

The gist of Plaintiff's argument is that he committed no crime, yet was issued a citation. The citation was rescinded, which establishes there was no probable cause for the disorderly conduct citation.

Here, Defendants contend that they did not arrest Plaintiff, they merely detained him for purposes of a medical evaluation. Even assuming that Plaintiff was arrested, the record shows that Wilson did not comply with the reasonable orders of the officers. Thus, Tobet did not act unreasonably in issuing the citation, even if his supervisor deemed it imprudent to do so.

Further, even if probable cause was lacking, the Court finds Defendants would be entitled to immunity. In sum, Tobet's acted in the course of employment; he reasonably believed he was acting, within the scope of his authority; the acts were undertaken in good faith, or not with malice, and the acts were discretionary, rather than ministerial, in nature. Accordingly, summary judgment must be granted as to this claim.

### 2. Gross Negligence

Under MICH. COMP. LAWS § 691.1407(2) (a), gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results."

12

Here, the parties dispute whether the officers' conduct can be considered so reckless as to demonstrate a substantial lack of concern for whether injury results.

The Court finds, as a matter of law, no reasonable jury could find in favor of Plaintiff on this claim. The officers removed Plaintiff from the vehicle based on his own demeanor and failure to exit the vehicle. They had reason to believe that Plaintiff could suffer far more severe consequences by their inaction. And, in fact, he only suffered a minor scrape to his forehead. Therefore, the Court grants Defendants request for summary judgment on this claim.

### C. Disability claims

Title II of the ADA's reads, "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Michigan statute reads, "The opportunity to obtain employment, housing, and other real estate and full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability is guaranteed by this act and is a civil right." MICH. COMP. LAWS § 37.1102(1). Because the analysis of the federal and state statutory claims overlaps, the resolution of the federal claim is applicable to Plaintiff's state claim. Accordingly, the Court limits its discussion to the ADA claim.

Under Title II, public entities must make reasonable accommodations to assist disabled people while carrying out policies, procedures, and practices. 42 U.S.C. § 12182(b)(2)(A). To make out a prima facie case under Title II of the ADA, a plaintiff

13

must establish that:

> (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability

42 U.S.C. § 12132. For purposes of this motion, the Court assumes Plaintiff is a person with a disability, and directs its attention to the fourth element.

To establish a Title II claim, Wilson must show that, by reason of his disability, he was either "subjected to discrimination" by a public entity or "excluded from participation in or denied the benefits of the services, programs or activities of "any such entity." 42 U.S.C. § 12132. Plaintiff's federal and state discrimination claims rest on his assertion that defendants discriminated against him in failing to reasonably accommodate his disability. Specifically, his complaint is that the officers did not wait for the EMTs to arrive and treat him. Instead, Defendants employed unnecessary force, despite the absence of a legitimate threat to safety or medical necessity.

Wilson's "intentional discrimination" theory requires a showing that Defendants' allegedly discriminatory actions were motivated by his disability. Plaintiff has failed to produce evidence showing that Defendant Officers were motivated by a discriminatory intent. Moreover, in assessing the merits of the claim, the Court notes that Title II requirements are "subject to the bounds of reasonableness," and the duty upon public entities is not absolute. Tucker v. Tennessee, 539 F.3d 526, 532 (6th Cir. 2008). Consequently, when "officers are presented with exigent or unexpected circumstances, it would be unreasonable to require certain accommodations be made in light of the

14

overriding public safety concerns." Id. at 546 (citing Patrice v. Murphy, 43 F.Supp.2d 1156, 1160 (W. D. Wash.1999)). Of particular concern to this Court's analysis, is the appellate court's acknowledgment that, "we rely on and expect law enforcement officers to respond fluidly to changing situations and individuals they encounter. Imposing a stringent requirement under the ADA is inconsistent with that expectation, and impedes their ability to perform their duties." Id.

Defendants attempted to provide Plaintiff with medical assistance. Because they were unable to gain Plaintiff's cooperation, they took steps to ensure that Plaintiff could be evaluated by the EMTs. He prevented that from occurring by his combative behavior. Defendants are not required to put themselves or the EMTs at risk of harm because Plaintiff was suffering a diabetic reaction. Wilson, who exhibited combative behavior, is not immunized from his conduct merely because it is caused by a medical condition.

Moreover, there is case law holding that the ADA does not apply to "an officer's on-the-street responses to reported disturbances or other similar incidents, whether or nor those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." Hainze v. Richards, 207 F.3d 795 (5th Cir. 2000) (reasoning that requiring "officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents" is not required). Even considering the facts in the light most favorable to plaintiff, at the time Defendants removed Wilson from the vehicle, the situation was not under control. Wilson was not cooperating with the EMTs, who

15

were unable to administer medical treatment.

Accordingly, Wilson's statutory claims fail as a matter of law.

## IV. CONCLUSION

The Court therefore **GRANTS** Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

                         s/Marianne O. Battani
                         MARIANNE O. BATTANI
                         UNITED STATES DISTRICT JUDGE

Dated: May 12, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to counsel of record on this date by ordinary mail and electronic filing.

                         s/Bernadette M. Thebolt
                         Case Manager